173 So.2d 501 (1965)
Harold E. SCOTT, Appellant,
v.
CITY OF ORLANDO, a municipal corporation organized and existing under and by virtue of the laws of the State of Florida, and Don Mott, Intervenor, Appellees.
No. 5164.
District Court of Appeal of Florida. Second District.
April 2, 1965.
Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, for appellant.
Fletcher G. Rush and John A. Reed, Jr., of Rush, Reed & Marshall, Orlando, for appellees.
*502 ALLEN, Acting Chief Judge.
This appeal concerns the location of a proposed theatre and convention hall in the City of Orlando.
After considerable publicity and effort by interested persons, the freeholders of the City of Orlando passed a bond issue for $1,600,000 to build a theatre and convention hall. It appears that much of the publicity so stated, and most people were under the impression, that this facility would be located in a city park in the northern section of Orlando, however, there was nothing official concerning this. After the bond issue passed, a group of citizens started a campaign to have this building located in downtown Orlando. This group submitted a petition, signed by the requisite number of voters, to have an ordinance passed stating that this facility would be located downtown. This petition and the subsequent election came under the following provision of the City Charter:
"Any proposed ordinance may be submitted to the council by a petition signed by fifteen per cent of the total number of qualified registered voters of the City of Orlando. Within two weeks after the filing of said petition, said council may pass the said ordinance, or shall call a special election to be held within thirty days, at which the adoption or rejection of such ordinance shall be submitted to the qualified voters of said city. If a majority of the qualified voters voting on the proposed ordinance shall vote in favor thereof, said ordinance shall thereupon become a valid ordinance in said city. Any number of proposed ordinances may be voted upon at the same election according to the provisions of this section."
In the election, the voters passed the ordinance providing that the building would be located downtown. The appellant then brought this suit challenging the validity of this proceeding, which he lost in the lower court.
The final decree provides:
"* * * the court makes the following findings of fact:
"FIRST, the plaintiff in good faith and in good conscience worked on the bond election of May 29, 1962 and felt that the best interests of the City of Orlando would be met by erecting the proposed building in Loch Haven Park.
"SECOND, it has been the personal, but not the official act of the City Commissioners, to build a theater in Loch Haven Park, but no actual ordinance was passed designating Loch Haven Park as the site for the proposed building.
"THIRD, there being no official act by the city, the city could have changed its plans and if the city could have changed its plans, the registered voters could also have done the same.
"FOURTH, the initiative provisions found in Chapter 2, Section 14, of the Charter of the City of Orlando, are broad enough to call for the election which was the subject matter of this case, without differentiating the subject matter as between administrative and legislative.
"FIFTH, the initiative provisions appear to have grown out of the old town hall system of government and should be zealously guarded.
"SIXTH, good faith has been shown on everybody's part and the ordinance enacted by the initiative procedure is valid."
Before this referendum was held the city spent about $125,000 on architects' fees and other items in anticipation of building this facility in the park in north Orlando.
The appellant raises the following points on appeal:
"I. Is the question of where to locate a bond-financed municipal theatre, *503 which has been approved by free-holders in an election, an administrative function not subject to a restrictive ordinance effected through an initiative election, or is it a legislative function subject to initiative and referendum elections?
"II. Where a special election is held pursuant to an initiative petition submitting to the voters a proposed ordinance specifying the area within which a municipal theatre must be built, if at all, following prior freeholder election approving issuance of bonds for that purpose, is such election valid when non-freeholders are allowed to vote?
"III. Where the executive officials of a city, in seeking freeholder approval of a proposed bond issue for specified municipal improvements, actively represent that a proposed city theatre and convention hall will be built in a cityowned park where sufficient land is available, and freeholders voting in favor of the bond issue rely on such representations and approve the bond issue, and thereafter the city spends a considerable proportion of the bond proceeds on plans for the construction on the specified site, useless elsewhere, is the city estopped from passing an ordinance stating that such facility may only be erected in a designated `downtown' area, where the land would have to be acquired?"
We affirm the lower court.
Charles S. Rhyne, in his book, Municipal Law, §§ 9-14 (1957) discusses the initiative, concerning municipal ordinances and resolutions, as follows:
"The initiative is the power reserved to the inhabitants of a municipality by the state constitution, statutes or city charter to propose or initiate laws or ordinances which may be enacted or rejected by all the electors. It is the right of the people of the municipality to exercise their inherent or political power over the city council on matters of local concern. The initiative extends only to matters within the powers of the council, and generally applies to legislative matters, sometimes including ordinances, resolutions, orders or votes, but not to administrative, executive or judicial functions. Whether a particular matter is legislative or administrative in character is a judicial question for the courts. The tests they have applied in determining whether an ordinance is legislative or administrative include whether it makes new law or executes a law already in existence; whether it constitutes a declaration of public purpose and provides ways and means for the accomplishment of that purpose; and whether it is of a permanent character and not merely temporary or routine. The initiative power generally does not extend to matters which require a minute investigation of facts and figures, the advice of experts, the conduct of audits or a close and careful study of masses of facts and figures. In addition, emergency measures are generally exempted from the initiative. If the city council passes the proposed measure verbatim or an acceptable amended version of it after a petition has been filed, it has been held in some instances that the matter need not be put to a vote of the electors. It has been held that the signatures of petitioners may not be withdrawn after the jurisdiction of the court has attached.
"Although initiative provisions are liberally construed in favor of the power, substantial compliance with all statutory or charter provisions is mandatory. Where all mandatory requirements have been met, mandamus will lie to compel submission of the ordinance to the voters. However, mandamus will not lie to compel submission of an ordinance which is unconstitutional on its face or which is incomplete, indefinite, *504 and ambiguous, or where the falsity of the signatures on the petition or the affidavits is shown.
"Under some statutory and charter provisions, municipal governing bodies have been denied the power to repeal or amend initiated ordinances, and it has been held that these objectives may be achieved only by another initiative. However, other courts have sometimes sustained the power of the city council to repeal or amend ordinances initiated by the voters."
For another discussion of this subject, see 1 Antieau, Municipal Corporation Law, §§ 4-11 (1964), which states in part:
"Local law-making by popular initiative is frequently permitted, and the power is customarily as broad, but only so broad, as the power of the municipality's governing body to legislate. And no more than councilmanic ordinances can initiated ordinances be arbitrary, unreasonable or discriminatory. The initiatory power is to be liberally construed in favor of the power reserved. There is some authority permitting the use of the initiative to adopt an ordinance providing for the repeal of an earlier one. Often published notice of the content of the proposed ordinance, as well as the time and place of the contemplated election, must be given with particularity. And, although clerical and technical deficiencies are often overlooked, the basic initiative procedures established by statute or charter must be substantially complied with. The adequacy of the initiative, as well as the referendum, petition is regularly subject to judicial attack. However, most statutes and charters provide that the petition must first be presented to the municipal authorities for a determination of adequacy, and courts have said they will not reverse the decision of the municipal officers unless it was actuated by fraud or misconduct the substantial equivalent of fraud. Where all mandatory steps have been fulfilled, mandamus will lie to compel submission of the initiated ordinance to the electorate."
In 5 McQuillin, Municipal Corporations, § 16.54 (3d ed. 1949) it is stated:
"The power of initiative or referendum may be conferred by the sovereignty upon a municipality with respect to any matter, legislative or administrative, within the realm of local affairs; and often the power, as conferred, is extensive, including all ordinances and resolutions and practically all actions that might be taken by a municipal council. The power, however, cannot be unlimited. Leastwise, the power extends to all matters of local concern other than those excluded by express or necessarily implied exceptions contained in charter, statute or constitutional provision. The generality of the phrase `any proposed ordinance' in an initiative and referendum statute does not make it void for uncertainty. On the other hand, the power of initiative and referendum often is more or less restricted and is not extended, for example, to other than `general county and municipal business.' Quite commonly, it is not extended to police or emergency legislation or administrative action. An ordinance is not subject to referendum if its enactment is mandatory. For example, where the adoption of an appropriation ordinance is mandatory, the ordinance is not subject to referendum. Furthermore, ordinances or measures that are unconstitutional or void or beyond the power or authority of a municipality to enact, are not subject to initiative or referendum."
Section 16.57, Illustrations, states:
"Illustrative of the discussion in the preceding sections, the following have been deemed proper propositions for *505 initiative or referendum: selection of a site for a city hall, acquisition or construction of a public utility, establishment of a housing authority, improvement ordinances, contract for a municipal gas supply, the question of licensing of saloons, and authorization of Sunday moving pictures. On the other hand, the following have been deemed not subject to initiative or referendum: establishment of a federal aid route, the settlement of claims in litigation, ordering the sale of an electric light plant, and purchase of equipment, appointment and removal of public officers, improvement ordinances, establishing street grades, and change in specifications and form of a building contract."
The Florida Supreme Court, in Barnes v. City of Miami, Fla. 1950, 47 So.2d 3, in an opinion authored by Mr. Justice Sebring, stated that the question of whether the city could engage in low-cost housing and slum clearance could properly be submitted to the electors of Miami under the initiative power conferred by the City charter since the issues to be determined should be classed as legislative and not executive or administrative. Even if it was not legislative, the charter provision conferring initiative power was there broad enough to include the pertinent subject matter.
The Barnes suit was brought to enjoin the City of Miami from holding an election. The circuit court entered a decree dismissing the complaint and an appeal was taken to the Supreme Court. In its opinion, the Court quoted from Section 5 of the Charter Law of the City of Miami as follows:
"`The people shall have power at their option to propose ordinances, including ordinances granting franchises or privileges and to adopt the same at the polls, such power being known as the initiative.'"
The Court then continued:
"* * * It is contended by the appellants that the ordinance which the voters of the city will be called on to adopt or reject at the election sought to be enjoined is wholly administrative in nature and hence is not the proper subject for an election under the charter provision we have quoted.
"The power of the initiative may be conferred by the state upon a municipal corporation in respect to any matter, legislative or administrative, within the realm of municipal affairs. Where the power of initiative is given by the legislature it will be generally held to extend to all matters of local concern, unless some matters are expressly or impliedly excluded from its operation by exceptions contained in the charter, the general statutes of the state, or constitutional provisions. See McQuillin, Municipal Corporations, 3rd Ed. pp. 251, 252, Sec. 16.54; compare Spencer v. City of Alhambra, 44 Cal. App.2d 75, 111 P.2d 910; Hunt v. Mayor and Council of City of Riverside, Cal. App., 184 P.2d 717, Id., 31 Cal.2d 619, 191 P.2d 426. Statutes giving the power of initiative to the electors of a municipality are to be liberally construed by the courts to the ends of permitting rather than restricting the power and to attaining rather than preventing its object. McQuillan, Municipal Corporations, 3rd Ed. p. 246, Sec. 16.51."
Subsequently, on page 6, the Court states:
"When these matters are considered, there would seem to be little question that the issue to be submitted to the electorate should be classed as legislative and not executive or administrative. The long-range program of providing low-cost housing facilities will certainly be permanent and general in character. The acts to implement the program will be characteristically legislative, in that exemption from taxation *506 must be given and provisions made for payments in lieu of taxes; streets must be vacated within the area of the project as may be necessary in its development; waivers of the City building code must be granted; * * *".
In State v. City of St. Petersburg, Fla. 1952, 61 So.2d 416, our Supreme Court had before it an appeal from a decree validating certificates of the City of St. Petersburg in the principal amount of $1,500,000, designated as "Sewer System Revenue Certificates, 1952 Series." The first question presented was whether the City had the power to issue the certificates without first obtaining approval of the freeholders. The Court held that the City did have such power.
The Court then proceeded to discuss whether Ordinance No. 17.c, which increased the rates theretofore in existence for sewer charges, was the kind of ordinance contemplated by the initiative provision of the City Charter. In answering this question the Court, in an opinion by Mr. Justice Drew, said:
"We hold that appellant's contention that this Ordinance should have been either repealed or submitted to the qualified electors at an election is wholly without merit. The rule is uniformly accepted that initiative and referendum do not apply to executive or administrative matters of the kind covered by this Ordinance. We approve the following quotation from McQuillin's Municipal Corporations, Volume 5 (3rd ed.), Section 16.55:
"`The power of initiative or referendum usually is restricted to legislative ordinances, resolutions or measures, and is not extended to executive or administrative action.
"`In reference to what constitutes legislative and what administrative action in connection with restriction of the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. A construction of a provision that "any proposed ordinance" may be submitted to the commission by a petition signed by a specified number of qualified electors has been construed to mean that any legislative measure of permanent operation can be so submitted, such construction being required by all-inclusive terms of the governing statute, particularly provision therein that an ordinance adopted under it cannot be repealed or amended except by a vote of the people. An ordinance which shows an intent to form a permanent rule of government is one of permanent operation within requirement that measure must be of permanent operation in order to be submitted to electors under initiative and referendum statute. Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to vote of the people under initiative and referendum statute, which restricts submission to people to measures of permanent operation.'"
We note from the Court's reference to McQuillin's Municipal Corporations, hereinbefore quoted, that actions relating to subjects of permanent and general character, are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative, which resulted in the Court holding that an ordinance which would increase rates theretofore in existence for sewer charges, not being a permanent operation, was not subject to an initiative refendum.
In another action, City of Lake Worth v. State of Florida, Fla. 1959, 111 So.2d 433, which involved the validity of revenue certificates issued by the City of Lake Worth, the Court held that an ordinance providing *507 for the issuance of revenue certificates under which the city would incur indebtedness of $2,100,000, to be amortized over a period of 29 years, to acquire funds for proposed improvement of its water and electric systems, involved matters which were general, permanent, and legislative in character. The Court held that the city could be required to submit to referendum election under a special act granting the people of the city the prerogative of accepting or rejecting at the polls any measure passed by the city commission.
The Court, in an opinion by Mr. Justice Thomas, said:
"The election was not held because, says the appellant, the ordinance under consideration was not the sort of `measure', it was intended could be required to be submitted to the voters inasmuch as it was `administrative,' in contradistinction to `legislative,' in character.
"* * *
"We go willingly with appellant to the case [State v. City of St. Petersburg, Fla., 1952, 61 So.2d 416] for the rule but we come away with the conclusion that dissimilarity between the factual situation with which the court then dealt and the one with which the court now deals precludes our accepting the case as support for a decision in appellant's favor.
"The court said in that case that passage of an ordinance simply regulating charges for sewage disposal was the exercise of an executive or administrative function which the city could not be required to submit in a referendum election.
"* * *
"We see a vast difference between an ordinance dealing with service charges, which from their very nature may fluctuate frequently according to the needs of the city and the demands of the citizens, and an ordinance by which the city will make an extensive improvement of its utility plant and incur an indebtedness of $2,100,000 to be amortized over a period of 29 years.
"The range and nature of the investment, and the size and duration of the debt, in our opinion, stamp the object of the ordinance as permanent, even though not eternal, and not one that could be categorized as special, temporary or impermanent. We conclude that the undertaking is much more accurately described by the adjectives `general' and `permanent' than by the antonyms `special' and `temporary.'"
Justices Drew and Thornal dissented from this opinion with Justice Drew writing the dissenting opinion.
We pause here to state that in the case now before us no question is raised as to the validity of the bond issue in question, which had been earlier voted on by the freeholders of the City of Orlando.
In the case of Burdick v. City of San Diego, 29 Cal. App.2d 565, 84 P.2d 1064 (1938), the Court stated:
"It seems to be settled in California that the selection and designation of a city hall site, and the steps incident to the determination that a city hall should be erected on the selected site, are legislative acts subject to referendum. Hopping v. Council of City of Richmond, supra [170 Cal. 605, 150 P. 977]; Jardine v. City of Pasadena, 199 Cal. 64, 248 P. 225, 48 A.L.R. 509. There is no reasonble distinction to be made between a legislative enactment selecting a site and providing for the erection of a city hall, and proceedings selecting a site and providing for the erection of a police station. It is admitted, however, that if these legislative functions of selecting the site and providing for the erection of the police *508 station had been exercised by legislative enactments of the city council of San Diego, other than resolution No. 67868, against which the referendum was directed, and if the resolution was merely executive or administrative in character and was only a procedural step in carrying out the municipal policy established by prior legislative enactments, no referendum of that resolution can be had. Hopping v. Council of City of Richmond, supra; Mckevitt v. City of Sacramento, 55 Cal. App. 117, 203 P. 132. We must, therefore, examine the legislative record of San Diego to determine this question."
The above declaration was repeated in Knowlton v. Hezmalhalch, 32 Cal. App.2d 419, 89 P.2d 1109 (1939), in the following language:
"The different parts of the act, standing alone and by themselves, are indefinite and uncertain and incapable of being understood. They are interdependent, one upon the other, because it takes all of them to make a complete act, and each act could not be intelligently voted upon separately by the people. To do so would lead to much confusion. If the act could be divided into separate parts as the council did in passing it, the parts would have to be grouped together in order to determine what the act of the council really was. It is well settled in California that the selection and designation of a city hall site and the steps incident to the determination that a city hall should be erected on the proposed site, are legislative acts subject to referendum. Jardine v. City of Pasadena, 199 Cal. 64, 248 P. 225, 48 A.L.R. 509; Burdick v. City of San Diego, supra."
The appellant, in his brief states:
"We are not contending that the City of Orlando had its hands so tied that it could not build this facility elsewhere if there were good and valid reasons for the proper city officials to exercise their free and reasoned discretion in connection with the matter. However, the record conclusively shows that the City of Orlando, through its elected officials, did not wish to build this facility anywhere except in Loch Haven Park; they all felt that they were morally bound to carry through on their commitments; and they further felt that this was the most suitable location for the facility. They refused to pass the proposed ordinance after it had been submitted to them by petition, and only authorized the special election because they mistakenly believed they had no alternative."
If the city officials of Orlando had the right to change the location of the facility involved in this case, we see no reason why the people of the City of Orlando, voting in an initiative election upon a city ordinance changing the location of this permanent facility, should not have the same right.
In his second question, hereinabove quoted, the appellant asks whether an initiative petition submitting to the voters a proposed ordinance specifying the area within which a municipal theatre must be built, following prior freeholder election approving issuance of bonds for that purpose, is valid if all the electors are allowed to vote rather than the freeholders. It is our view, as that of the court below, that all of the qualified voters had a right to participate in the designation of the place where the theatre should be located.
We note the third question of the appellant wherein he contends that the city should be estopped from passing an ordinance designating that the theatre-convention hall should be located in the downtown area of Orlando when there had been representations at the time of the freeholders' election that it would be located at another place. We hold that the facts set forth in this record would not estop the city from *509 passing an ordinance providing that the facility should be located in downtown Orlando.
Finding no reversible error, we affirm the lower court.
Affirmed.
SHANNON, J., and FUSSELL, CARROLL W., Associate Judge, concur.