TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 95-907 |
| of | : | |
| | : | June 20, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE SHEILA JAMES KUEHL, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

Does a domestic violence shelter constitute a nuisance the existence of which must be disclosed by the seller of residential property?

CONCLUSION

A domestic violence shelter does not constitute a nuisance the existence of which must be disclosed by the seller of residential property.

ANALYSIS

Civil Code section 1102.6[1] requires that a seller of real property must make certain disclosures pertaining to the property to be sold. (See *Sweat* v. *Hollister* (1995) 37 Cal.App.4th 603.) Among the conditions and circumstances subject to disclosure is the existence of: "Neighborhood noise problems or other nuisances." (§ 1102.6 (C)(11).) The present inquiry is whether the location of a domestic violence shelter within the immediate vicinity of real property to be sold must be disclosed by the seller.[2] Specifically, does such a shelter constitute a "nuisance"?

_____

[1] All references hereafter to the Civil Code are by section number only.

[2] Penal Code section 273.7, subdivision (a) provides: "Any person who maliciously publishes, disseminates, or

Section 1102.6 is to be liberally interpreted so that a buyer will be fully informed on matters affecting the value of the real estate to be purchased. (*Alexander* v. *McKnight* (1992) 7 Cal.App.4th 973, 977.) In *Alexander*, the court held that the failure to warn of the existence of noisy and troublesome neighbors constituted a violation of the seller's statutory obligation of full disclosure.

The inquiry presented for consideration is posited with no factual specifications pertaining to a particular shelter. A shelter may of course be operated in such a manner as to constitute a nuisance. For purposes of this discussion, however, it will be assumed that the shelter in question is being managed in every respect in compliance with the laws of the state and with applicable local ordinances, including all conditions, covenants, and restrictions pertaining to the community in which it is situated.

Does the mere existence of a shelter, in and of itself, constitute a nuisance? The term "nuisance" is defined in section 3479 as follows:

"Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

Section 3482 additionally provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

While particular activity authorized by statute cannot be deemed a nuisance, the manner in which such activity is performed may constitute a nuisance. (*Friends of H Street* v. *City of Sacramento* (1993) 20 Cal.App.4th 152; *Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116.) Again, we are concerned here only with a shelter that is conducted in a manner which would not otherwise constitute a nuisance. (E.g., *Jones* v. *City of Los Angeles* (1930) 211 Cal. 304 [a properly conducted sanitarium for the care and treatment of the mentally ill cannot be held to constitute a nuisance]; *Jardine* v. *City of Pasadena* (1926) 199 Cal. 64 [a well-conducted hospital for the treatment of contagious and infectious diseases may not be deemed a nuisance]; *Ex Parte Quong Wo* (1911) 161 Cal. 220 [a lawfully operated public laundry is not a nuisance per se]; *Vesper* v. *Forest Lawn Cemetery Assn.* (1937) 20 Cal.App.2d 157 [operation of a mortuary not a public nuisance]; *Carter* v. *Chotiner* (1930) 210 Cal. 288 [cemetery is not a nuisance per se].)

The operation of a domestic violence shelter is expressly authorized by law. The Domestic Violence Centers Act (Welf. & Inst. Code, §§ 18290-18307) was enacted in 1977 (Stats. 1977, ch. 892, § 1), with the declared intent that "the state shall support projects in several areas

---

otherwise discloses the location of any domestic violence shelter . . . is guilty of a misdemeanor." This statute, however, has no bearing upon the issue here considered since a disclosure made in good faith compliance with the law governing the sale of property would not be "malicious."

throughout the state for the purpose of aiding victims of domestic violence by providing them a place to escape the destructive environment" (Welf. & Inst. Code, § 18290). Welfare and Institutions Code section 18293 further provides in part:

"Proposed or existing programs which meet the requirements set forth in Section 18294, shall receive funding pursuant to this chapter upon the approval of the local board of supervisors. Priority for funding shall be given to agencies and organizations whose primary function is to administer domestic violence programs. . . . Upon approving one or more programs for funding, the board shall direct the county treasurer to disburse moneys from the county's domestic violence program special fund and for funding, the board shall designate a local agency to monitor the program or programs. Such monitoring shall include information regarding the number of persons requesting services; the number of persons receiving services according to the type of services provided; and the need, if any, for additional services or staffing."

Section 18294 of the Welfare and Institutions Code states in turn as follows:

"Such programs shall be designed to provide the following basic services to victims of domestic violence and their children:

"(a) Shelter on a 24 hours a day, seven days a week basis.

"(b) A 24 hours a day, seven days a week switchboard for crisis calls.

"(c) Temporary housing and food facilities.

"(d) Psychological support and peer counseling.

"(e) Referrals to existing services in the community and followup on the outcome of the referrals.

"(f) A drop-in center to assist victims of domestic violence who have not yet made the decision to leave their homes, or who have found other shelter but who have a need for support services.

"(g) Arrangements for school age children to continue their education during their stay at the center.

"(h) Emergency transportation to the shelter, and when appropriate, arrangements with local law enforcement for assistance in providing such transportation."

In addition, Health and Safety Code section 123227 provides in part:

"(a)  The Maternal and Child Health Branch of the State Department of Health Services shall administer a comprehensive shelter-based services grant program to battered women's shelters pursuant to this section.

"(b)  The Maternal and Child Health Branch shall administer grants to battered women's shelters that propose to expand existing services or create new services, and to establish new battered women's shelters to provide services, in any of the following four areas:

"(1)  Emergency shelter to women and their children escaping violent family situations.

"(2)  Transitional housing programs to help women and their children find housing and jobs so that they are not forced to choose between returning to a violent relationship or becoming homeless.  The programs may offer up to 18 months of housing, case management, job training and placement, counseling, support groups, and classes in parenting and family budgeting.

"(3)  Legal and other types of advocacy and representation to help women and their children pursue the appropriate legal options.

"(4)  Other support services for battered women identified by the advisory council, including, but not limited to, creative and innovative service approaches such as community response teams."

Penal Code section 13823.4 also states in part:

"(a)  The Legislature finds the problem of family violence to be of serious and increasing magnitude.  The Legislature also finds that acts of family violence often result in other crimes and social problems.

"(b)  There is in the Office of Criminal Justice Planning, a Family Violence Prevention Program.  This program shall provide financial and technical assistance to local domestic and family violence centers in implementing family violence prevention programs. . . ."

Penal Code section 13823.15 further provides in part:

"(a)  The Legislature finds the problem of domestic violence to be of serious and increasing magnitude.  The Legislature also finds that existing domestic violence services are underfunded and that some areas of the state are unserved.

"(b)  There is in the Office of Criminal Justice Planning, a Comprehensive Statewide Domestic Violence Program.  The goals of the program shall be to provide local assistance to existing service providers, to maintain and expand services based on

a demonstrated need, and to establish a targeted or directed program for the development and establishment of domestic violence services in currently unserved and underserved areas. The program shall provide financial and technical assistance to local domestic violence centers in implementing all of the following services:

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "(4) Emergency `safe' homes or shelters for victims and families.
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "Priority for financial and technical assistance shall be given to emergency shelter programs and `safe' homes for victims of domestic violence and their children."

Not only are domestic violence centers maintained "under the express authority of a statute" within the terms of section 3482, the foregoing statutory provisions clearly reflect the strong public policy of the state to support the operation of domestic violence centers throughout the state. In view of this established policy, it may not be presumed that the Legislature intended to include a domestic violence shelter within the meaning of "nuisance" by mere implication. (78 Ops.Cal.Atty.Gen. 253, 260 (1995); 75 Ops.Cal.Atty.Gen. 256, 260 (1992).) We note that those charged with the administration of a particular statutory responsibility must take cognizance of and effectuate, or at least refrain from acting in derogation of, other valid governmental policies. (78 Ops.Cal.Atty.Gen. 171, 175 (1995); 75 Ops.Cal.Atty.Gen., *supra*, 260.)

Accordingly, it is concluded that a domestic violence shelter does not constitute a nuisance the existence of which must be disclosed by the seller of residential property, since (1) the mere existence of such a shelter does not fall within the definition of a "nuisance" within the meaning of section 3479, (2) such a shelter is maintained "under the express authority of a statute" within the purview of section 3482, and (3) section 1102.6 must be construed in a manner consistent with the strong public policy of the state in favor of operating domestic violence shelters throughout the state.

* * * * *