47 So.2d 3 (1950)
BARNES et al.
v.
CITY OF MIAMI et al.
Supreme Court of Florida, Special Division B.
June 26, 1950.
Rehearing Denied July 18, 1950.
*4 Anderson & Nadeau, Miami, for appellants.
J.W. Watson, Jr., Miami, for appellees.
Pat Cannon and John G. Simms, Miami, as amici curiae.
SEBRING, Justice.
The appellants, who were plaintiffs in the court below, have appealed from a decree of the Circuit Court of Dade County, Florida, dismissing a bill of complaint in a suit brought against the City of Miami and its several commissioners. The purpose of the suit was to enjoin the City and its Commission from calling and holding an election under the initiative provisions of the city charter to determine whether the city commission should adopt an ordinance entitled "An Ordinance Providing for Low-Cost Housing and Slum Clearance; Providing for Application of Preliminary Advance of Funds by the Housing Authority of the City of Miami, Florida; Providing for a Cooperative Agreement Between the City of Miami, Florida, Dade County, and the United States of America, Acting By and Through Their Respective Duly Authorized Officials and Employees; and Authorizing and Instructing the City Manager and Any and All Other Duly Authorized Officials to Execute the Attached Agreements."
Section 5 of the Charter Law of the City of Miami provides: "The people shall have power at their option to propose ordinances, including ordinances granting franchises or privileges and to adopt the same at the polls, such power being known as the initiative." It is contended by the appellants that the ordinance which the voters of the city will be called on to adopt or reject at the election sought to be enjoined is wholly administrative in nature and hence is not the proper subject for an election under the charter provision we have quoted.
The power of the initiative may be conferred by the state upon a municipal corporation in respect to any matter, legislative or administrative, within the realm of municipal affairs. Where the power of initiative is given by the legislature it will be generally held to extend to all matters of local concern, unless some matters are expressly or impliedly excluded from its operation by exceptions contained in the charter, the general statutes of the state, or constitutional provisions. See McQuillin, Municipal Corporations, 3rd Ed. pp. 251, 252, Sec. 16.54; compare Spencer v. City of Alhambra, 44 Cal. App.2d 75, 111 P.2d 910; Hunt v. Mayor and Council of City of Riverside, Cal. App., 184 P.2d 717, Id., 31 Cal.2d 619, 191 P.2d 426. Statutes giving the power of initiative to the electors of a municipality are to be liberally construed by the courts to the ends of permitting rather than restricting the power and to attaining rather than preventing its object. McQuillan, Municipal Corporations, 3rd Ed. p. 246, Sec. 16.51.
In the present case the purpose of the election is to allow the electors to determine whether the City shall engage in a public housing program pursuant to the *5 provisions of the U.S. Housing Act of 1937 as amended. See 42 U.S.C.A. § 1401 et seq. The Florida Legislature, by the enactment of specific laws, has found that the need exists for low-cost housing projects in the state and has authorized each of the several municipalities in the state having a population of more than 2,500 people according to the last preceding federal or state census to enter into such a program. See chapters 421, 422, 423, Florida Statutes, 1941, F.S.A. This court has sustained the constitutional validity of particular agreements entered into by certain municipalities of the State with the federal government in the establishment of such projects. See Lott v. City of Orlando, 142 Fla. 338, 196 So. 313; Marvin v. Housing Authority of Jacksonville, 133 Fla. 590, 183 So. 145.
In some of the cases cited by the appellants in their brief the rule is stated that the power of the initiative should be restricted to legislative matters or measures and should not be extended to executive or administrative action. In determining what may constitute a legislative and what an administrative matter or measure, the cases state that if the measure proposed relates to a subject of permanent and general character it will be regarded as legislative, while if the measure is with respect to a subject of temporary and special character it will be regarded as administrative. See McQuillin, Municipal Corporations, 3rd Ed. pp. 253, 254, Sec. 16.55 and cases cited.
In our view it is not necessary to determine whether the rule stated by appellants is applicable in the present case, or whether, in the light of the language employed in the charter of the City of Miami, the initiative provision should be given a broader interpretation. If the particular provision of the charter is broad enough to cover all matters of local municipal concern, an election on any issue involving municipal action could validly be submitted to the electors of the municipality; and if the initiative power should be limited solely to legislative matters, the charter provision is broad enough to include the subject matter of the issue to be submitted in the election. For by the terms of the controlling statutes the Housing Authority created in the City of Miami to administer any approved project is forbidden to transact business or exercise any powers until or unless the governing body of the City declares by proper resolution that a need exists for low-cost public housing in the City. Until the City acts affirmatively in the matter, therefore, either by the direct action and decision of its governing officials or as the result of a mandate from its people expressed through the means of an election, the housing program or plan can never come into realization and the housing authority created by the general statutes can never have active existence or power to function.
The authority of the City to do the various things provided by the contract to be submitted with the proposed issue to the voters is contained within the broad terms of section 422.04, Florida Statutes, 1941, F.S.A. With reference to the provisions of the contract requiring certain things to be done by the City in the event the general plan is adopted, they follow, in essential form, the language of the requirements of the federal and state statutes which govern the administration of such projects.
Under the contract, provided the issue submitted is adopted by the electors, the City will be required to take the following action:
"(a) furnish or cause to be furnished to the Local Authority and the tenants of such Project (i) the public services and facilities which are at the date hereof being furnished without cost or charge to other dwellings and inhabitants in the City, including but not limited to: educational, fire, police and health protection and services; maintenance and repair of public streets, roads, alleys, sidewalks, sewer and water systems; garbage, trash and ash collection and disposal; street lighting on public streets and roads within such Project and on the boundaries thereof; and adequate sewer services for such Project; and (ii) also such additional public services and facilities as may from time to time hereafter be furnished without cost or charge to other dwellings and inhabitants in the City;
*6 "(b) vacate such streets, roads, and alleys within the area of such Project as may be necessary in the development thereof, and convey without charge to the Local Authority such interest as the City may have in such vacated areas; and, insofar as it is lawfully able to do so without cost or expense to the Local Authority or the City, cause to be removed from such vacated areas, insofar as it may be necessary, all public or private utility lines and equipment;
"(c) insofar as the City may lawfully do so, grant such waivers of the building code of the City as are reasonable and necessary to promote economy and efficiency in the development and administration of such project; and make such changes in any zoning of the site and surrounding territory of such Project as are reasonable and necessary for the development and protection thereof.
"(d) accept grants of easement necessary for the development of such Project; and
"(e) cooperate with the Local Authority by such other lawful action or ways as the City and the Local Authority may find necessary in connection with the development and administration of such Project * * *" "4 * * * elimination by demolition, condemnation, effective closing, or compulsory repair or improvement of unsafe or unsanitary dwelling units situated in the [slum] area substantially equal in number to the number of newly constructed dwelling units provided by such Project."
When these matters are considered, there would seem to be little question that the issue to be submitted to the electorate should be classed as legislative and not executive or administrative. The long-range program of providing low-cost housing facilities will certainly be permanent and general in character. The acts to implement the program will be characteristically legislative, in that exemption from taxation must be given and provisions made for payments in lieu of taxes; streets must be vacated within the area of the project as may be necessary in its development; waivers of the City building code must be granted; changes must be made in zoning restrictions; grants of easements, and dedications of streets, roads, alleys and sidewalks, must be accepted. All these things must be done through the adoption of ordinances by the legislative body of the City; for the City Manager, as the administrative head of the municipal government, does not have the power or authority to close streets, give waivers of the building code, change zoning restrictions, or accept grants of easements or dedications of streets, roads, alleys and sidewalks. The City Manager may not bind the City or enter into a contract of the nature proposed without authorization of the City authorities or the electors who will be bound by it.
From this we conclude that whatever may be the extent of the City's power under the initiative provision of its charter, the authority of the City to submit the proposed issue to the electors must be sustained, whether under the view that the provision is unlimited in its aspect or whether on the ground that the matter proposed is legislative in character.
All other contentions made by the appellants have been examined and are found to be without merit.
The decree appealed from should be affirmed.
It is so ordered.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur.