706 So.2d 85 (1998)
Vivian BROOKS and Patricia High, Appellants,
v.
WATCHTOWER BIBLE AND TRACT SOCIETY OF FLORIDA, INC., a Florida corporation, Edith Bush, Lorraine Spivey, Laurie Jaworski, and the City of West Palm Beach, Florida, a municipal corporation, Appellees.
No. 97-4167.
District Court of Appeal of Florida, Fourth District.
February 18, 1998.
*86 John M. Jorgensen and Kevin M. Wagner of Scott, Royce, Harris, Bryan, Barra & Jorgensen, Palm Beach Gardens, for Appellants.
Leigh E. Dunston, Jack J. Aiello and Patricia A. Leonard of Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., and Gregory Olds, West Palm Beach, for Appellee Watchtower Bible and Tract Society of Florida.
D. Culver Smith, III and Elizabeth D. Stone of Holland & Knight, LLP, West Palm Beach, for Appellees Edith Bush, Lorraine Spivey, and Laurie Jaworski.
Patrick N. Brown and Claudia M. McKenna, West Palm Beach, for Appellee City of West Palm Beach.
WARNER, Judge.
The appellants, residents of the City of West Palm Beach ("City"), challenge an order of the trial court which enjoined the holding of a city referendum to repeal an ordinance passed by the City Commission authorizing the sale of the West Palm Beach Auditorium ("Auditorium") and surrounding property to the Watchtower Bible Society ("Watchtower"). Because we hold that the Charter of the City of West Palm Beach ("Charter") and the West Palm Beach Code ("Code") authorize the referendum, we reverse the order of the trial court.
In November of 1996, Watchtower and the City began discussions regarding the sale and purchase of a 72-acre tract of municipal land which included the Auditorium. On July 14, 1997, the City Commission held a duly noticed public hearing on the first reading of an ordinance which would authorize the execution of a purchase and sale agreement with Watchtower. After the second hearing, the Commission approved the ordinance by a vote of four to one on July 28, 1997. Pursuant to section 166.041(4), Florida Statutes (1997), a municipal ordinance takes effect ten days after its passage. On August 7, 1997, the Mayor and City Clerk signed the sales agreement with Watchtower.
In conformance with the Charter provisions, on August 27, 1997, certain registered voters of the City, including the appellants, filed a petition to repeal the ordinance authorizing the sale by referendum. The City Clerk certified the petition for a referendum as sufficient on September 22, 1997, subsequent to the effective date of the ordinance *87 and after Watchtower had substantially complied with its duties under the contract by depositing two of three required payments in escrow. As a result of receiving the petition, the City notified Watchtower that it could not perform under the contract until the Commission had acted on the petition and the election was held. The City failed to take any steps to comply with the terms of the contract. On October 6, 1997, the City set a special election for the referendum.
Watchtower filed suit on October 21, 1997, seeking to permanently enjoin the City from holding a special election for the purpose of voting on the referendum. It alleged that the referendum was improper, since it sought to repeal an ordinance which was administrative, rather than legislative, and that the City's actions unconstitutionally impaired its contract rights. In granting summary judgment in favor of Watchtower, the trial court determined that the Charter referendum provision was applicable only to legislative ordinances, and since the sale of property was an administrative act, the ordinance approving the sale was not the proper subject of a referendum. Further, the court determined that the repeal of the ordinance would unconstitutionally impair Watchtower's contract rights. Therefore, the trial court granted the injunction.
I. Electorate's Right to a Referendum
Article I, Section 1 of the Florida Constitution declares that "[a]ll political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people." As the Supreme Court has noted, "[t]he citizens of the State of Florida in drafting and adopting the 1968 Constitution reserved certain powers to themselves, choosing to deal directly with some governmental measures. The referendum, then, is the essence of a reserved power." See Florida Land Co. v. City of Winter Springs, 427 So.2d 170, 172 (Fla.1983).
Under the Florida Constitution, the people elect the Legislature, and it is the Legislature which enacts the general laws under which the citizens of Florida live. The general laws of Florida encompass the creation of municipalities. See Ch. 165, Fla. Stat. (1997). A municipal corporation derives not only its existence but its power from the Legislature. See Article VIII, § 2(a), Fla. Const.; Town of Palm Beach v. City of West Palm Beach, 55 So.2d 566, 572 (Fla.1951). The Legislature adopted the Charter of West Palm by special law in 1965. See Chs. 65-2381, 65-2382, at 4153-4267, Laws of Fla. Pursuant to the home rule powers granted in chapter 166, Florida Statutes (1997), the City Charter was amended by a referendum vote of the people to its present form in 1988. See Charter, Part I editor's note. The Charter now provides that "[a]ll powers of the City shall be vested in the City Commission except those powers specifically given to the Mayor ... and except those powers specifically reserved in this Charter to the electors of the City." See Charter § 2.03 (emphasis added). One of the powers specifically reserved to the electors is the power of initiative and referendum. See Charter § 6.02.
The Charter of West Palm Beach provides:
Except as otherwise provided by law for issuance of City bonds, the electors may approve or reject any ordinance at the polls in the manner provided in this article....
Charter § 6.02. The Charter does not define "ordinances," but the Code describes when an ordinance must be passed. In section 1-3, the Code states:
Except as may be otherwise specifically required by law or provided hereby, enactment of an ordinance shall be the sole method of action by the city commission in.... selling, exchanging, leasing for a term exceeding five (5) years, encumbering, or pledging real property owned by the city; adoption of a resolution or enactment of a resolution shall be the sole method of action by the city commission in levying taxes by adoption of the budget, and in providing for an expenditure of funds in excess of five hundred dollars ($500.00); and in all other instances the city commission may act by resolution or by motion; provided, in each instance in which a method is specifically prescribed hereby for the taking of action by the city *88 commission, the method so prescribed shall be followed.

Code § 1-3 (1997) (emphases added).
The Code also provides for the method of selling or leasing municipal property:
Each sale or exchange of real property owned by the city ... shall require approval by one of the following methods:
1. A four-fifths (4/5) vote of the membership of the city commission at either first reading, or second reading, or both, of an ordinance approving such sale, lease or exchange; or
2. Approval by vote of the city electors in a referendum election called and held as provided thereby.
Code § 2-18(27)(c)(1997)(emphasis added). The adoption of an ordinance requires more notice and public hearings than a resolution requires. See § 166.041(3)(a). Thus, it is apparent that, pursuant to the Code, the sale of property by the City is treated with a greater level of scrutiny than other transactions, such as the hiring and firing of employees.
In granting the injunction, the trial court considered the charter provision providing for a referendum but determined that under case law it did not apply to administrative ordinances, relying on State v. City of St. Petersburg, 61 So.2d 416 (Fla.1952). In St. Petersburg, the supreme court quoted McQuillin's The Law of Municipal Corporations, to the effect that the power of referendum is generally restricted to legislative ordinances and is not extended to executive or administrative actions. Specifically, St. Petersburg noted from McQuillin:
A construction of a provision that `any proposed ordinance' may be submitted to the commission by a petition signed by a specified number of qualified electors has been construed to mean that any legislative measure of permanent operation can be so submitted.... An ordinance which shows an intent to form a permanent rule of government is one of permanent operation within requirement that measure must be of permanent operation in order to be submitted to electors under initiative and referendum statute. Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to vote of the people under initiative and referendum statute, which restricts submission to people to measures of permanent operation.
Id. at 419-20 (quoting 5 E. McQuillin, The Law of Municipal Corporations § 16.55 (3d ed.)). St. Petersburg involved the approval of sewer system revenue certificates, and the referendum issue arose in connection with the right of the city commission to enact an ordinance imposing charges for sewer services which would be pledged for the payment of the certificates. These are the very type of fluctuating charges referenced by McQuillin which should not be subject to a referendum. The narrow holding of St. Petersburg therefore is that "initiative and referendum do not apply to executive or administrative matters of the kind covered by this Ordinance." 61 So.2d at 419 (emphasis added).
Barnes v. City of Miami, 47 So.2d 3 (Fla. 1950), decided shortly before St. Petersburg, also relied on McQuillin in stating that:
[t]he power of the initiative may be conferred by the state upon a municipal corporation in respect to any matter, legislative or administrative, within the realm of municipal affairs. Where the power of initiative is given by the legislature it will be generally held to extend to all matters of local concern, unless some matters are expressly or impliedly excluded from its operation by exceptions contained in the charter, the general statutes of the state, or constitutional provisions.
Id. at 4 (citing McQuillin, supra, § 16.54). In the section quoted in Barnes, McQuillin does not limit itself to initiative but includes the power of referendum. Thus, Barnes stated the rule that "[s]tatutes giving the power of initiative to the electors of a municipality are to be liberally construed by the courts to the ends of permitting rather than restricting the power and to attaining rather than preventing its object." 47 So.2d at 4.
Both because of the reservation of political power to the people in the Florida Constitution and the specific reservation of *89 the power of referendum to the voters in the Charter, we must interpret the Code and Charter provisions in a light most favorable to sustaining the exercise of that power. Id. With that in mind, St. Petersburg's narrow holding does not compel us to agree with the trial court that an ordinance authorizing the sale of a major city asset cannot be the subject of a referendum. See also City of Lake Worth v. State, 111 So.2d 433 (Fla. 1959).
Appellees also argue that section 166.041(1)(a), Florida Statutes, when read in tandem with section 6.02 of the Charter, permits a referendum only when the action taken is legislative in nature, as distinguished from executive or administrative. Section 166.041(1)(a) defines "ordinance" as "an official legislative action of a governing body, which action is a regulation of a general and permanent nature and enforceable as a local law." Section 166.041(1)(b) defines a "resolution" as "an expression of a governing body concerning matters of administration, an expression of a temporary character, or a provision for the disposition of a particular item of the administrative business of the governing body." While reference to the statutory definition is instructive, it does not answer the question of what specific subjects are characterized as regulations of a general and permanent nature. In the present case, the Code specifically provides that selling or leasing real property of the city must be accomplished by ordinance. See Code § 2-18(27). Thus, the City itself has determined that the sale of municipal real estate is a matter of a permanent nature and is not of an administrative type. Although municipal ordinances are inferior in status to state statutes, where there is no direct conflict between the two, both should stand. See Boven v. City of St. Petersburg, 73 So.2d 232, 234 (Fla.1954). We perceive no conflict with any Florida statute in West Palm Beach's provision for the disposition of municipal property by ordinance.
Moreover, even without the express provision in the Code requiring the sale of real estate by ordinance, we would consider the sale of 72 acres of city property, including the City's public auditorium, a legislative act. In Scott v. City of Orlando, 173 So.2d 501 (Fla. 2d DCA 1965), the court held that the siting of a municipal theater was the proper subject for an initiative petition, requiring an election. If the siting of a public building can be the subject of a referendum, then we see no reason why the sale of a public building cannot be the subject of a referendum also. We distinguish People v. City of Centralis, 1 Ill.App.2d 228, 117 N.E.2d 410 (1953), cited by the trial court, in which the court found that the sale of municipal airport property was not subject to a referendum. In that case, a state statute not only limited the power of referendum to legislative matters but another statute provided for the method and manner of selling municipal real estate. As the municipal authorities would merely be exercising an administrative function in following the statutory duties as agents of the state government, their act would not be considered legislative. In Florida, under home rule provisions, the same result does not follow. See Ch. 166, Fla. Stat. We therefore determine that the ordinance authorizing the sale of the Auditorium and surrounding land is the proper subject of a referendum under the Florida Constitution, state statutes, and the Charter and Code of the City of West Palm Beach.
II. Constitutionality of the Referendum as Impairing the Contract between the City and Watchtower
Even if the electors are generally entitled to a referendum, Watchtower argues that the ordinance of repeal would effect an unconstitutional impairment of its contract rights. Therefore, the holding of a referendum would be futile. In Dade County v. Dade County League of Municipalities, 104 So.2d 512 (Fla.1958), the supreme court determined that in order to enjoin the submission of a proposal to the electorate, a court must find that the proposal is unconstitutional in its entirety. We think that it is premature to determine that repealing the ordinance, which authorized the execution of the contract for sale, will impair the contract between the City and Watchtower in the constitutional sense.
*90 In Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248 (7th Cir.1996), the court considered whether a city ordinance repealing a contract with a developer was an unconstitutional impairment of the contract. The court suggested, "[i]t would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution." Id. at 1250. A breach of contract, the court said, triggers a duty to pay damages for the reasonably foreseeable consequences of the breach. See id. at 1251. "If the duty is unimpaired, the obligation of the contract cannot be said to have been impaired." Id. Thus, the court found that the repealing ordinance may have constituted a breach of contract, but so long as there was a remedy for the breach, there was no unconstitutional impairment of contract. In the instant case, assuming the validity of the contract, the ordinance of repeal would not necessarily invalidate the contract since Watchtower would have its rights for breach of the contract.
Watchtower argues, nevertheless, that because the contract provides for the remedy of specific performance, the referendum would be a futile act. However, unless it is demonstrated that the ordinance is unconstitutional in its entirety, there is no ground, including futility, to prevent the holding of the election. See Dade County League of Municipalities, 104 So.2d at 514-16; West Palm Beach Ass'n of Firefighters, Local Union 727 v. Board of City Comm'rs of City of West Palm Beach, 448 So.2d 1212, 1214 (Fla. 4th DCA 1984); City of Coral Gables v. Carmichael, 256 So.2d 404, 408-09 (Fla. 3d DCA 1972)(referendum procedure provided in city charter constitutes integral step in legislative process and "in the absence of demonstrated illegality the legislative processes of the state ... which are provided for by law may not be impeded or prevented by the courts"). Moreover, specific performance is an equitable remedy. Whether a court will grant such a remedy will depend upon the facts presented to it on the issue. There may be facts and circumstances which may lead a court in equity to determine that a damage remedy would adequately compensate Watchtower. We are not prepared to determine on these pleadings that Watchtower is entitled as a matter of law to specific performance if the ordinance of repeal is passed at a referendum.
Reversed.
FARMER and GROSS, JJ., concur.