776 So.2d 281 (2000)
General Gene STERLING, et al., Appellants,
v.
BREVARD COUNTY, Florida, etc., et al., Appellees.
No. 5D00-578.
District Court of Appeal of Florida, Fifth District.
November 17, 2000.
Opinion Granting Rehearing January 19, 2001.
*282 Michael D. Jones of Leffler & Associates, P.A., Winter Springs, for Appellants.
Kyle P. King, Assistant Brevard County Attorney, Viera, for Appellees.
Kyle P. King, Assistant Brevard County Attorney, and Scott L. Knox, County Attorney, Viera, for Appellees (on rehearing).
PLEUS, J.
In 1995, the citizens of Brevard County established a charter-form of government. Every five years, a Charter Review Commission (CRC) is required to study county government and prepare proposed charter amendments, if needed, to improve the governance of the county. The proposed amendments are sent to the County Commission which then has only two options. The amendment can be adopted by the County Commission or it can be placed on the ballot for a vote of the people.
The CRC consists of 15 members appointed by the County Commission. The initial bylaws of the CRC, adopted in 1995, required a two-thirds vote of the CRC on all questions or motions. Rule 16 required a two-thirds vote of those present and voting to amend the bylaws. Rule 9 provided that after any proposed amendment to the Charter had been tentatively adopted, it must be reconsidered at the same or a subsequent meeting where ten members (a super majority) must approve the amendment before it is submitted to the County Commission.
While discussing the super majority issue on June 19, 1998, the attorney for the Commission erroneously opined that a simple majority could amend the bylaws. Based on this misdirected legal advice, the CRC, by a simple majority vote, modified Rule 16 to provide that a simple majority could amend the CRC's bylaws. Rule 9 was thereafter amended to provide that a simple majority was all that was required to forward a proposal to the county for either adoption or a vote by the people.
At the next meeting of the CRC on July 24, 1998, the chair of the CRC announced that a two-thirds vote would still be required to submit amendments to the County Commission. This caused considerable debate and confusion. As a result, only *283 four proposals were submitted to the County Commission.
A special meeting of the CRC was then held on August 12, 1998, for the specific purpose of considering seven amendments which had not been approved. At that same meeting with two-thirds present and voting, Rule 9 was correctly amended pursuant to a correct interpretation of Rule 16. That vote resulted in six of the seven proposals under consideration properly being sent to the County Commission.
When the six amendments arrived at the County Commission on August 18, 1998, the Commission questioned the legality of the August 12, 1998 meeting and refused to either enact them or place them on the ballot.[1]
On September 2, 1998, the CRC, partially at the request of some of the members of the County Commission, filed a "Complaint for Emergency, Declaratory, Injunctive, Mandamus and Other Relief." Among the relief requested, the County sought emergency declaratory relief under Chapter 86 concerning the legality of the action taken at the meeting on June 19th and a declaration that the six amendments adopted at the August 12th meeting be included on the ballot.[2] Judge Jackson held an emergency hearing on September 9, 1998 on the relief requested in the complaint. At the hearing the Clerk of the Court and the Supervisor of Elections were allowed to intervene for the obvious reason that both would be involved in the ballot process. The record of the various meetings of the CRC and the County Commission were received into evidence. The records establish that at the June 19th meeting, the CRC attempted to amend its bylaws and the vote was seven to four, a majority vote but not two thirds. The CRC then voted to change Rule 9 so that a majority vote would be all that was needed to pass the amendments as to the County Commission. At the next meeting on July 24, 1998, the attorney for the CRC flipflopped his advice.
A review of the transcript of the hearing before Judge Jackson on September 9th shows the focus of the hearing was on the validity of the votes taken at the June 24th meeting of the CRC and the concern for time required to get the ballots printed in time for the general election. Mr. Stadler, on behalf of the Clerk's office, made the following statement to the Court: "We would prefer there not be a final ruling on the case so we do have time to file a response to the complaint. I think we're at a temporary point...." It was apparent from other comments that all sides were concerned that should Judge Jackson enter a mandatory injunction, it would be difficult, if not impossible, to get the six amendments on the ballot for the November 3rd election.
Judge Jackson correctly ruled that the CRC did not properly amend its bylaws or Rule 9 at the meeting on June 19th. However, Judge Jackson in his written order never addressed the legality of the action taken at the August 12th meeting.[3] Had he chosen to do so, he would have found that the CRC had properly amended the *284 bylaws and sent the proposed amendments to the Commission after an appropriate vote on August 12th.
Still in doubt about the meeting on August 12th, and with all issues still pending except the validity of the June 19, 1999 meeting, the CRC filed an amended complaint in which it sought a declaration that the County Commission should have accepted the proposals adopted on August 12th, and either adopted the six charter amendments or placed them on the ballot. By then, it was too late to get the six on the ballot for the general election. Thus, the amended complaint asked for an order commanding the County Commission to call a special election if necessary.
The County Commission moved for a summary judgment, and finally, after a series of recusals and transfers to other judges, Judge Vincent Torpy granted the County's motion. In his order of January 24, 2000, reference is made to the June 19, 1998 meeting which Judge Jackson had previously indicated was improper. Nowhere in Judge Torpy's order is the meeting on August 12, 1998 ever mentioned. The judge's decision apparently was based on an erroneous belief that the case was then moot. The lower court makes no reference to law or fact in its determination that the matter was moot, but presumably the trial judge believed the matter moot because the general election had already been held.
We reverse and hold that the entry of a summary judgment in favor of the County Commission was error. The facts are not disputed and as a matter of law, the CRC should have prevailed. A summary judgment should have been entered in favor of the CRC and the relief requested should have been given. We hold the meeting on August 12, 1998 was proper and the passage of the general election did not make the issue moot.
The lower court should have given consideration to the undisputed facts and determined that the six amendments adopted at the August 12th, 1998 meeting were proper. In WFTV, Inc. v. Robbins, 625 So.2d 941 (Fla. 4th DCA 1993), the fourth district noted that mootness occurs when the issues presented are no longer alive or when the parties lack a legally cognizable interest in the outcome. The issue of the validity of the August 12th, 1998 meeting was not mooted by the subsequent County Commission meeting on August 18, 1998 which adopted four of the original proposed amendments. Indeed, the issue was at the forefront and kept alive by the request that judicial intervention be sought. The fact that the Commission refused to place six amendments on the ballot because of its concern over the validity of the August 12th meeting, in and of itself, creates a controversy leaving the issue live for review.
The fact that the general election was held which did not include the six amendments in question does not moot the issue or controversy. If such were the case, the inherent delays in the judicial process would prevent any valid issue from ever being heard after an election had been held. This would be an absurd result in our system of democracy.
If the decision of the trial court is allowed to stand, the entire concept of charter government and the power reserved to the people would be in jeopardy. All that would be required to thwart the will of the people would be to delay the vote of the County Commission until after the general election. We concede that in some cases emergency injunctive relief can be obtained prior to the election, but in this case, the question was not resolved in time.
We reject the argument that the CRC's authority expires after the general election, and hence, it has no standing. A pending judicial process extends not only the time of the Commission to submit the amendments to the next general election but also extends the life and purpose of the CRC. Nowhere in the charter, statutes or case law can it be found that an appointed *285 Charter Review Committee's life is snuffed out while litigation is pending just because the election, the subject of the litigation, has been held. Such a position would defy constitutional logic. We hold in this case that the pending judicial process extended not only the time for the Commission to submit the amendments to the next general election, but also extended the life and purpose of the Charter Review Commission.
This court has inherent power to order an election. The supreme court, in Williams v. Keyes, 135 Fla. 769, 186 So. 250 (1938), found that where the commission had failed to perform its statutory duty by failing to schedule a referendum of the proposed charter amendments at the next general election, a court had the power to do so.
The Florida Constitution, consistent with Keyes, gives the people the right to decide whether the six amendments should become part of the Charter. Article 1, section 1 of the Florida Constitution declares that "all political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people." As the supreme court noted, the citizens of the state of Florida, in drafting and adopting the Constitution, reserved certain powers to themselves, choosing to deal directly with some government measures. The referendum, then, is the essence of the reserved power. See Brooks v. Watchtower Bible and Tract Soc. of Florida, Inc., 706 So.2d 85 (Fla. 4th DCA 1998).
This court not only has the authority, but also the duty and obligation to require that the Brevard County Commission submit to the people the proposed six amendments that were not permitted to go forward as a result of the Commission's erroneous concern over parliamentary missteps. It is the people who are being denied the right to vote on the issues that the CRC felt were important enough to propose. It would be a sad day for the citizens of Brevard County if a procedural SNAFU deprives them of the right to review and vote on proposed amendments.
Some argue that a court of equity is a legal relic. All courts of appeal are required to do equity. Sometimes that requires us to order that something be done which is just and equitable. Put differently, it is the maxim "equity will do what ought to be done." Without equitable intervention, the will of the people will be silenced.
This opinion should not be construed merely as an advisory adjudication on the issues presented by the CRC's complaint. Even if it were, courts are always free to address the merits of an action which has been deemed moot if the action is capable of repetition yet evading review and presents an important issue. See State v. Kobel, 757 So.2d 556 (Fla. 4th DCA 2000).
The summary judgment in favor of the County Commission is reversed and the cause remanded to the trial court. The trial court shall issue a mandatory injunction to the County Commission of Brevard County to either adopt some or all of the six proposed amendments or place those not adopted on the ballot in the next general election or in a special election, whichever shall first be possible.
REVERSED AND REMANDED.
W. SHARP, J., concurs.
GRIFFIN, J., dissents, without opinion.

ON MOTION FOR REHEARING
PLEUS, J.
After the release of our initial opinion in this case, Brevard County moved for a rehearing, withdrawal of opinion, consolidation of appeals and oral argument. While the appeal was pending in this court, and prior to the release of the opinion, certain members of the Charter Review *286 Commission moved to "Plan B." They launched a petition drive that was approved by the Supervisor of Elections and a sufficient number of signatures was acquired. Petitioners then submitted three proposed amendments to the County Commission. The County Commission refused to place them on the ballot. Petitioners sought mandamus. The County responded with a claim that the amendments were unconstitutional as inconsistent with general law.
On October 6, 2000, Judge Lisa Davidson Kahn issued an order which held that two of the proposed amendments to the Brevard County Charter were unconstitutional. The two amendments were numbered one and five and dealt with Municipal Service Taxing Units and the borrowing of power of the County. That ruling was appealed, but the appeal has been dismissed. This dismissal made moot the appellees' motion to consolidate.
A third proposed amendment (Charter Amendment No. 19), dealing with retroactive term limits, was held to be constitutional and made its way onto the ballot at the general election held on November 3, 2000. It was passed by the voters so the need to place the amendment on the ballot no longer exists.
Three of the proposed amendments have not been voted on by the voters of Brevard County. The three are Number 32, dealing with a citizen's bill of rights, access to offices, etc.; Number 37, which limits the percentage of government-owned land exempt from taxation; and Number 38, which deals with providing compensation to landowners whose property values have been diminished by governmental regulation.
Therefore, we grant the motion for rehearing and modify our initial opinion to the extent that it directs all six of the amendments be placed on the ballot. Only amendments 32, 37 and 38 must be placed on the ballot in accordance with our previous opinion. The motions for consolidation of appeals and for oral argument are denied.
MOTION FOR REHEARING GRANTED; PRIOR OPINION MODIFIED; MOTIONS FOR CONSOLIDATION OF APPEALS AND ORAL ARGUMENT DENIED.
W. SHARP, J., concurs.
GRIFFIN, J., dissents, without opinion.
NOTES
[1] One of the six rejected amendments provided for retroactive term limits which, as one might conclude, would be rather obnoxious to a sitting commissioner.
[2] The specific language in the complaint is: "That the CRC meeting of June 19, 1998, was a duly called meeting and the vote of the membership taken therein is valid and binding on the CRC and its members" and "That the special meeting of August 12, 1998, was a valid and legally binding meeting and the six (6) amendments voted on by a majority of those present are legal and binding amendments to be submitted to the Commission for inclusion upon the ballot for November 3, 1998."
[3] The judge stated orally, "Therefore, the premises considered, the Court will deny the motion for (temporary injunction) and the Court has declared about as far as I can at this interim hearing, preliminary hearing, how it finds the evidence at this juncture." The written order entered September 16 addresses only the June 19, 1998 meeting and simply denies relief and reserves jurisdiction.