965 So.2d 365 (2007)
Carolyn J. WRIGHT, Michael Bornstein, Anita Mitchell, Gladys D. Van Otteren and Patricia M. High, Appellants,
v.
Lois FRANKEL, as mayor of City of West Palm Beach, a municipality of the State of Florida; Isaac Robinson, Jr.; Geraldine Muoio; James Exline; Kimberly Mitchell; and William Moss, as city commissioners of the City of West Palm Beach, a municipality of the State of Florida, and City of West Palm Beach, a municipality of the State of Florida, Appellees.
Nos. 4D06-3386, 4D06-3697.
District Court of Appeal of Florida, Fourth District.
October 3, 2007.
Thomas R. Julin and Patricia Acosta of Hunton & Williams LLP, Miami, for appellants.
Jane Kreusler-Walsh and Rebecca Mercier Vargas of Kreusler-Walsh, Compiani & Vargas, P.A., Brian B. Joslyn and Richard A. Jarolem of Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, and Claudia M. McKenna, City Attorney, West Palm Beach, for appellees.

ON MOTION FOR REHEARING EN BANC
TAYLOR, J.
We withdraw our previously issued opinion and substitute the following in its place.
Appellants are citizens and registered voters of the City of West Palm Beach in Florida. Because appellants disagreed with the City's decision to relocate the city *367 hall and the city library, they formed a petition committee, which gathered signatures of more than 3,000 electors on initiative petitions for ordinances requiring voter approval for the relocation. When the City refused to place their proposed initiative on the ballot, the Committee sought mandamus relief in circuit court to compel the City to place the initiative on the ballot. The circuit court determined that the doctrine of laches barred the mandamus action. Accordingly, the court quashed the alternative writ of mandamus it had entered earlier and denied the Committee's motion for summary judgment. Because we conclude that the trial court erred in ruling that laches barred the mandamus action, we reverse.
Background
Beginning in July 2002, the West Palm Beach City Commission passed a series of resolutions for its plans to develop a new City Center. Part of the plan involved relocation of the city hall and the city library to the Clematis Street/Banyan Boulevard corridor. On September 7, 2002, the City passed resolutions determining that the county property on Banyan Boulevard was a suitable location for a new city hall and authorizing an expenditure of $1,138,000 to acquire the land.[1]
From November 2002 until November 2003, the City passed more resolutions, authorizing a request for proposals from developers and permitting the West Palm Beach Community Redevelopment Agency (CRA) to acquire other properties for the development. On November 18 and 24, 2003, the City adopted resolutions authorizing the relocation of the library and city hall from their present sites to the D & D Centre site. Additional resolutions authorized expenditures for City Center development in the amounts of $16,115,400, $17,670,000, $19,490,000, $155,000, and $1,635,000.
On February 3, 2004, the City passed a resolution authorizing a request for proposals to develop, design, and build a new city hall and library on property to become known as the City Center. On October 12, 2004, the CRA passed a resolution for two expenditures for the project, each in the amount of $585,000. The CRA also passed a resolution authorizing its chair to enter into an agreement with Republic Properties Corporation ("Republic") for designing and developing City Center. On January 3, 2005, the City authorized $2,900,000 in expenditures for the city commons and waterfront construction fund. On March 28, 2005, the CRA passed a resolution amending City Center construction and operation funds, authorizing expenditures in the amounts of $1,188,268 and $650,000. On November 7, 2005, the CRA approved the City Center strategic finance plan and the implementation of said plan.
On March 13, 2006, the CRA passed a resolution authorizing expenditures of $405,000. Also on this date, the CRA passed a resolution authorizing its chairman to contract with Republic to provide for the demolition of the existing site structures. Later, after criminal charges were brought against a city commissioner for his role in securing the contract with Republic, the CRA passed a resolution on June 26, 2006, substituting Catalfumo Management Investments, Inc., as the new developer for the City Center project. Additional resolutions appear in the record relating to the completion of City Center.
On May 16, 2006, the Committee filed two petitions for initiative ordinances. *368 One sought an ordinance regarding relocation of city hall, which provided:
AN ORDINANCE OF THE CITY OF WEST PALM BEACH REQUIRING A REFERENDUM BY THE VOTERS OF THE CITY OF WEST PALM BEACH BEFORE CITY HALL CAN BE RELOCATED TO ANOTHER SITE, PROVIDING FOR REPEAL OF LAWS IN CONFLICT, PROVIDING FOR SEVERABILITY AND PROVIDING FOR AN EFFECTIVE DATE.
WHEREAS, the City Hall of the City of West Palm Beach and the property upon which it is situated is a valuable asset and resource of the City;
WHEREAS, any decision to relocate the City Hall is a decision that will greatly impact the voters and residents of the City of West Palm Beach;
WHEREAS, the voters of the City of West Palm Beach should decide where their city government should operate and conduct business;
WHEREAS, pursuant to the Florida Constitution, all political power is inherent in the people and the referendum is the essence of the reserved power of the voters of the City of West Palm Beach;
NOW, THEREFORE, BE IT ORDAINED BY THE COMMISSION OF WEST PALM BEACH, FLORIDA:
Section 1. The recitals contained in the Preamble to this Ordinance are adopted by reference and incorporated as if fully set forth in this section.
Section 2. Referendum Vote: The City Hall of the City of West Palm Beach shall not be relocated to another site unless the relocation is first approved upon favorable vote of a majority of the electors of the City of West Palm Beach voting thereon in a referendum election.
Section 3. Repeal of Laws and Conflict: All local laws and Ordinances of the City of West Palm Beach in conflict with any provisions of this Ordinance are hereby repealed.
Section 4. Severability: If any section, paragraph, sentence, clause, phrase, or word of this Ordinance is for any reason held by a Court to be unconstitutional, inoperative or void, such holding shall not affect the remainder of this Ordinance.
Section 5. Effective Date: The provisions of this Ordinance shall become effective either upon approval by the City Commission in accordance with Section 6.06 of the City Charter, or by a favorable vote by a majority of the electors and certification of the election returns pursuant to Section 6.10 of the City Charter.
The Committee also filed a petition for initiative ordinance on the relocation of the city library with almost identical provisions.[2]
On May 22, 2006, the city clerk certified to the City Commission that sufficient signatures were received for the initiative petitions. On June 19, 2006, instead of adopting the ordinances or scheduling a referendum election, the City Commission passed a resolution authorizing the filing of an action in circuit court for declaratory relief regarding the initiative petitions. The resolution stated that the city attorney *369 had "conducted such review and has determined that the Initiative Petitions do not contain ballot questions that may be properly placed on a ballot for consideration by the voters."
Alternative Writ of Mandamus Proceedings
On June 20, 2006, the Committee filed a complaint in circuit court for issuance of a writ of mandamus to require the City to set an election on the two initiatives. The complaint was based on the City's failure to either pass the ordinances or submit the ordinances to the electors within the window provided by the charter.
On June 20, 2006, the Committee also filed a motion to issue an alternative writ of mandamus. The memorandum in support of this motion contended that the ordinances concerned legislative, rather than administrative matters, and, thus, were appropriate matters for an ordinance, that the petitions were not submitted in an untimely manner, and that the petitions would not impair the City's contractual obligations. After hearing argument, the trial court issued the alternative writ on June 29, 2006, and directed the City to hold the election or to show cause why it should not be required to hold the election. The Committee also moved for final summary judgment. In response, the City filed an answer and affirmative defenses and a counterclaim for declaratory relief. It also moved to quash the alternative writ.
At the final hearing held on August 18, 2006, the Committee offered into evidence the relevant City Charter provisions, the petitions and certifications of the signatures as valid and verified, and the resolution of the City Commission refusing either to adopt the ordinances or to submit them to the electorate. The City presented affidavits essentially describing the steps that had already been taken to carry out the relocation of the city hall and library.
After the hearing, the trial court entered an amended order quashing the alternative writ of mandamus and denying the Committee's motion for summary judgment. The court determined that the writ was barred by the doctrine of laches. It noted that the Committee had delayed challenging the City's decision to relocate city hall and the library for well over two years, and that the City, having taken substantial steps toward relocating the buildings, would be severely prejudiced by the delay that would be caused by granting the requested relief. The Committee appealed.
Legal Analysis
Article VI of the City's Charter confers upon the electors of the City the power of initiative. Section 6.01 of the City Charter provides:
Sec. 6.01. Power of initiative.
The electors may propose any ordinance, except an ordinance appropriating money or authorizing the levy of taxes, and may adopt or reject it at the polls. This power shall be known as the initiative. Any initiated ordinance may be submitted to the City Commission by petition signed by at least five (5) percent of the City electors as shown by the current voter registration lists.
Section 6.03 of the City Charter lists the technical requirements that all petition papers circulated for the purpose of initiative must meet. Section 6.04 sets forth the procedure that must be followed for the filing, examination and certification of all initiated petitions. Section 6.07 sets forth the duties and responsibilities of the Commission after the City Clerk has examined and certified an initiative petition. It provides:
Sec. 6.07. Consideration by City Commission.

*370 The City Commission shall proceed forthwith to consider any certified initiative or referendum petition received from the City Clerk. In considering an ordinance proposed by initiative petition, the City Commission shall follow the same procedural requirements for passage that are prescribed hereby for ordinances generally, including public hearing thereon, and the City Commission shall take final action thereon not later than thirty (30) days after the date of submission thereof to it. . . .
After the Commission has considered the proposed initiative as required by section 6.07, the Commission is then required to either adopt the initiated ordinance as its own or submit the ordinance to the electors, as required by section 6.08 below:
Sec. 6.08. Submission to electors.
If the City Commission fails to pass an ordinance proposed by initiative petition or passes it in a form different from that set forth in the petition . . . the proposed or referred ordinance shall be submitted to the electors in its original form not less than thirty (30) days nor more than ninety (90) days after the final vote thereon by the City Commission. The City Commission may provide for a special election, and it shall so provide if no regular election is to be held within this period.
The City argues that the trial court's decision to dismiss the petition for writ of mandamus was within the court's sound discretion and that an appellate court should not disturb the trial court's ruling in mandamus proceedings unless clear error appears. It further argues that "determination of whether a mandamus claim is barred by laches is for the trial court," citing Metro. Dade County Plumbing Contractors' Examining Bd. v. State ex rel. Bishop, 216 So.2d 76, 77 (Fla. 3d DCA 1968).
"Mandamus is an appropriate remedy to compel the performance of a ministerial act that an agency has a clear legal duty to perform. `A duty or act is defined as ministerial where there is no room for the exercise of discretion, and the performance being required is directed by law.'" Shulmister v. City of Pompano Beach, 798 So.2d 799, 802 (Fla. 4th DCA 2001) (quoting Shea v. Cochran, 680 So.2d 628, 629 (Fla. 4th DCA 1996) (quoting Town of Manalapan v. Rechler, 674 So.2d 789, 790 (Fla. 4th DCA 1996))). In Shulmister, an initiative committee circulated an initiative petition for an amendment to the Pompano Beach City Charter. It then took the necessary steps to place the proposal on the ballot. The City Commission tried to prevent the proposal from being placed on the ballot, contending that the proposal contained a defective ballot summary. The trial court denied the committee chairman's petition for a writ of mandamus and for injunctive relief to prohibit removal of the proposal from the ballot. On appeal, we reversed the denial of the writ of mandamus because the law plainly required the city to prepare a proper ballot summary and place the committee's proposed amendment on the ballot.
In this case, it is undisputed that petitioners followed the procedures authorized by the city charter for requiring the City Commission to either adopt their proposed ordinances or submit them to the electorate in a referendum election. Yet, the trial court denied the petition based on the equitable doctrine of laches. The court reasoned that the Committee had unreasonably delayed challenging the City's plans to relocate the city hall and library and that the proposed ordinances, even if approved, could not be applied to block the planned relocation after years of City actions to implement the projects. However, neither delay in seeking a referendum *371 nor the possible consequences of an election on the referendum can justify the court's failure to enforce the referendum process.
In Brooks v. Watchtower Bible & Tract Society of Florida, Inc., 706 So.2d 85, 90 (Fla. 4th DCA 1998), we held that a referendum on an ordinance proposed by initiative cannot be prevented "unless it is demonstrated that the ordinance is unconstitutional in its entirety." There, a group of citizens used the initiative process to seek a referendum to repeal an ordinance authorizing a contract for the sale of municipal property. Pursuant to the provisions of the city charter, the city commission placed the proposed referendum on the ballot. The prospective purchaser of the property sought to enjoin an election on the referendum, arguing that the repeal would be futile because it could sue the city for specific performance of the contract to sell the property. The trial court granted the injunction. We reversed, holding that the possibility that the referendum would be futile did not justify the trial court's interference with the right of the people to vote on the referendum. Discussing the electorate's right to a referendum, we stated the following:
Under the Florida Constitution, the people elect the Legislature, and it is the Legislature which enacts the general laws under which the citizens of Florida live. The general laws of Florida encompass the creation of municipalities. See Ch. 165, Fla. Stat. (1997). A municipal corporation derives not only its existence but its power from the Legislature. See Article VIII, § 2(a), Fla. Const.; Town of Palm Beach v. City of West Palm Beach, 55 So.2d 566, 572 (Fla.1951). The Legislature adopted the Charter of West Palm by special law in 1965. See Chs. 65-2381, 65-2382, at 4153-4267, Laws of Fla. Pursuant to the home rule powers granted in chapter 166, Florida Statutes (1997), the City Charter was amended by a referendum vote of the people to its present form in 1988. See Charter, Part I editor's note. The Charter now provides that "[a]ll powers of the City shall be vested in the City Commission except those powers specifically given to the Mayor . . . and except those powers specifically reserved in this Charter to the electors of the City." See Charter § 2.03 (emphasis added). One of the powers specifically reserved to the electors is the power of initiative and referendum. See Charter § 6.02.
Id. at 87.
If, as we held in Brooks, a suggestion of futility is not a proper basis for preventing citizens from exercising their charter right of referendum to enact ordinances, then neither is a claim of unreasonable delay. The people reserved to themselves the power of referendum. Their legal right to govern themselves should not be abridged. Where, as here, the Committee has demonstrated a clear legal right to mandamus relief, the trial court lacks discretion to deny such relief based on laches.
Although the City cites a few cases suggesting that mandamus actions are subject to the laches defense, none of these cases concern the power of the people to enact ordinances through referendum. In State ex rel. Haft v. Adams, 238 So.2d 843 (Fla. 1970), the Florida Supreme Court applied the doctrine of laches to prevent delay and interference with an election proceeding. There, a judicial candidate sought to remove the names of other candidates from the election ballot on the ground that the candidates had not paid a sufficient qualifying fee. Because the petitioner's claim was tardy and the ballots were already printed, the court ordered the election to *372 proceed as scheduled. In Ladas v. Titus, 53 So.2d 323 (Fla.1951), a police officer brought a mandamus action to compel his reinstatement to the police force when he was dismissed before he completed his probationary period. Another mandamus case cited by the City, Board of Public Instruction of Hendry County v. State ex rel. Hilliard, 188 So.2d 337 (Fla. 2d DCA 1966), concerned a change in millage rates.
In those cases cited by the City which involved a referendum on a charter provision or the passage of a constitutional amendment, the courts did not apply the doctrine of laches. In State ex rel. Clendinen v. Dekle, 173 So.2d 452 (Fla.1965), the supreme court determined that the defense of laches did not apply in a mandamus action to compel the state canvassing board to recertify statewide results on a proposed constitutional amendment. In Scott v. City of Orlando, 173 So.2d 501 (Fla. 2d DCA 1965), which involved a suit challenging the validity of an ordinance to locate a theater and convention hall in the downtown area of Orlando, the Second District Court of Appeal held that the location of the buildings was a proper subject for an initiative petition requiring an election despite the fact that the city had already spent money on architects' fees and other items in anticipation of building the facility at another location. The court upheld the validity of the ordinance calling for a referendum, stating that "[i]f the city officials of Orlando had the right to change the location of the facility involved in this case, we see no reason why the people of the City of Orlando, voting in an initiative election upon a city ordinance changing the location of this permanent facility, should not have the same right." Id. at 508.
In Wilson v. Dade County, 369 So.2d 1002 (Fla. 3d DCA 1979), the Third District held that it was improper to enjoin the electorate from passing upon a proposed ordinance to limit the county millage rate in a referendum election where the alleged invalidity of the proposed ordinance did not clearly appear on its face and there was no constitutional challenge to the proposed ordinance. The court reversed the injunction because "the trial court was not authorized by the applicable law prospectively to interfere with the electoral process by precluding a decision of the voters on the proposed ordinance." Id. at 1003.
The common thread running through cases concerning the referendum process is the principle that citizens are free to express their views on municipal matters through the power of referendum and that courts should not interfere with the exercise of their referendum rights except in very narrow circumstances. See West Palm Beach Ass'n of Firefighters, Local Union 727 v. Bd. of City Comm'rs of City of West Palm Beach, 448 So.2d 1212, 1214 (Fla. 4th DCA 1984) (holding that where the proposed initiative ordinance governing resolution of contract issues between the city and its firefighter employees was unconstitutional in its entirety and on its face, the trial court properly denied petition for writ of mandamus; however, where challenge to the initiative petition is based on grounds that it is unconstitutional in part or invalid on non-constitutional grounds, such issue is not cognizable by the court prior to the proposed election); Gaines v. City of Orlando, 450 So.2d 1174, 1177 (Fla. 5th DCA 1984) (reversing an injunction prohibiting the city commission from placing an initiative ordinance on the ballot on the basis of its claim that the ordinance would violate statutes); Wilson, 369 So.2d at 1003; Rivergate Rest. Corp. v. Metro. Dade County, 369 So.2d 679 (Fla. 3d DCA 1979) (holding that a referendum election to restrict smoking in public *373 places would be enjoined only if the proposed law was invalid in its entirety).
Here, as in Brooks, the proposed ordinances have not been shown to be defective or unconstitutional in any respect. The City's opposition to submitting the ordinances to the electors is based primarily on the passage of time and expenditure of funds on relocation efforts. However, those city expenditures were paid for by the taxpayersthe very same citizens who would weigh these factors and vote on any future relocation and cost issues. The city charter entitles them to vote on these issues, regardless of their failure to propose these ordinances at some earlier point. Moreover, as the Committee points out, the City passed resolutions, instead of ordinances, to effectuate their plans for relocation. The thirty-day limitation for repealing ordinances, under section 6.02 of the City Charter, thus does not apply. Further, the charter does not prohibit new initiative ordinances that negate the effect of mere resolutions.
Although Brooks arose from an action to enjoin the City from placing an ordinance before the electors for referendum, rather than an action to compel the City to place an ordinance on the ballot, the governing principle is the same: the right of the voters to exercise their power of initiative and referendum should be honored "unless it is demonstrated that the ordinance is unconstitutional in its entirety." 706 So.2d at 90. An ordinance requiring a vote before the relocation of city buildings is a proper subject of a referendum under the Florida Constitution, state statutes, and the City's Charter. Because the City failed to comply with its legal duty to either adopt the Committee's proposed ordinances or submit them to the electorate in a referendum election, the trial court erred in quashing the alternative writ of mandamus and denying the Committee's motion for summary judgment.
Reversed and remanded.
WARNER, POLEN, FARMER, STEVENSON and GROSS, JJ., concur.
SHAHOOD, C.J., dissents with opinion, in which MAY, J., concurs.
STONE, J., dissents with opinion, in which MAY, J., concurs.
GUNTHER, KLEIN and HAZOURI, JJ., recused.
SHAHOOD, C.J., dissenting.
I dissent. I would deny the motion for rehearing en banc.
The facts of this case as stated in the original majority opinion were that the City began passing resolutions as early as July of 2002 relating to the development of the City Center area. Thereafter, more resolutions were passed up to November 2003. It was not until May of 2006, almost four years after the passage of the first resolution, that the Committee filed a petition for initiative ordinance on the relocation of City Hall.
As we held:
Laches is defined as an "[u]nreasonable delay in pursuing a right or claim almost always an equitable onein a way that prejudices the party against whom relief is sought." Black's Law Dictionary 891 (8th ed. 2004). Generally, whether a lawful claim is barred by laches is a matter of trial court discretion. Metro. Dade County Plumbing Contractors' Examining Bd. v. State ex rel. Bishop, 216 So.2d 76, 77 (Fla. 3d DCA 1968).
Wright v. Frankel, 32 Fla. L. Weekly D97, D98 (Fla. 4th DCA Dec. 27, 2006).
Like the majority opinion on the motion for rehearing en banc, I agree that:

*374 If . . . a suggestion of futility is not a proper basis for preventing citizens from exercising their charter right of referendum to enact ordinances, then neither is a claim of unreasonable delay. The people reserved to themselves the power of referendum. Their legal right to govern themselves should not be abridged.
I too feel that the right of the citizenry to govern themselves through the referendum process is an extremely important right, but not a limitless right. In this case the committee, by waiting over three years to file its petition for initiative ordinance, went well beyond any permissible time constraints for such filing.
I also agree with the decisions cited by the new majority opinion that:
The common thread running through cases concerning the referendum process is the principle that citizens are free to express their views on municipal matters through the power of referendum and that courts should not interfere with the exercise of their referendum rights except in very narrow circumstances. See West Palm Beach Ass'n of Firefighters, Local Union 727 v. Bd. of City Comm'rs of City of West Palm Beach, 448 So.2d 1212, 1214 (Fla. 4th DCA 1984) [emphasis added].
Again, this is not a limitless right, but rather is a case involving "very narrow circumstances."
I do not agree that where the Committee has demonstrated a right to mandamus, the court lacks discretion to deny such relief based on laches. I therefore conclude, as we held in the original majority opinion, the trial court did not abuse its discretion in determining that the doctrine of laches applied.
MAY, J., concurs.
STONE, J., dissenting.
I am not unmindful of the compelling basis for our recognizing the right to exercise the initiative process granted by the charter. However, in my judgment, the trial court had the discretion to conclude that the extraordinary delay in bringing this initiative subjects it to application of the equitable doctrine of laches. That doctrine is available in mandamus proceedings. See State ex rel. Haft v. Adams, 238 So.2d 843, 844 (Fla.1970); Ladas v. Titus, 53 So.2d 323 (Fla.1951); Brown v. Firestone, 382 So.2d 654, 671 (Fla.1980); Bd. of Pub. Instruction of Hendry County v. State ex rel. Hilliard, 188 So.2d 337 (Fla. 2d DCA 1966), aff'd on other grounds, 191 So.2d 561 (Fla.1966).
In this case, almost three years passed, the project was well underway, and millions of dollars had been spent and committed by the time the initiative was presented to City. Although the proposed ordinances are silent as to whether they apply to the move of the city hall and library in progress, they appear, to me, to be directed at the current relocation.
The trial court could properly recognize that Committee had not acted for approximately three years while City continued to pass resolution after resolution providing for and funding the current relocation. Although the parties argue about the extent of planning, expenditures, and completeness of the project as it relates to the prejudice element, I would conclude that there has been enough work done on the project to support the trial court's conclusion of prejudice to City.
The trial court could also consider, and find instructive, section 6.02 in determining what constitutes an unreasonable delay. That section provides that a petition seeking to repeal an ordinance, or submit that ordinance to a vote of the electors, *375 must be filed within thirty days of enactment of the ordinance. Although City, properly, passed this project through resolutions rather than by ordinance, the time limitation provision in the charter evinces an intent that objections be lodged to the actions of City within a brief period of time. Though I am mindful of the difference between an ordinance and a resolution, section 6.02 is of sufficiently like character to guide the court in weighing the equity of laches as it applies to an unreasonable delay in effectively seeking to repeal the three years of resolutions. See generally Radiation, Inc. v. Campbell, 200 So.2d 192, 193 (Fla. 4th DCA 1967) ("[R]ecognizing that in courts of equity there is no such thing as a statute of limitations but rather that the court is governed by the doctrine of laches, [but noting] the Florida Supreme Court nevertheless held an equity action could be barred by applying the statute of limitations.") (citing Grable v. Nunez, 64 So.2d 154 (Fla.1953)); Reed v. Fain, 145 So.2d 858, 870 (Fla.1961) ("A statute of limitation may, of course, be employed as a guide in an equity action in connection with a careful consideration of all of the existing equities.").
Here, the delay could properly be considered unreasonable when gauged against the thirty-day period that would have been imposed had City acted by ordinance rather than resolution. Committee acknowledges the thirty-day limit would apply to these petitions had they been directed at an ordinance. If the right to contest an ordinance is cut off after thirty days, it follows that, at some point, the right to overturn acts passed by resolutions may similarly be cut off.
As noted by the trial court, the delay in this case was thirty times longer than the time period provided in the charter. There comes a point when an unreasonable delay in bringing an action trumps the right to vote on the questioned decision. See Paget v. Logan, 78 Wash.2d 349, 474 P.2d 247, 252 (1970) (en banc) ("[A]t some point in time, a proposed stadium project may progress to a point where only administrative decisions will remain to complete the project. Initiative measures concerning site selection at that time could well be inappropriate."); Kirsch v. City of Abilene, 120 Kan. 749, 244 P. 1054, 1056 (1926) (finding laches where "[t]he plaintiffs . . . stood by from April until September, while the city, under the instruction of the voters, was disposing of bonds, wrecking a building, incurring large obligations, expending considerable sums of public money, and entering into contracts involving great amounts of money and levying a tax for payment of the bonds, before they asserted their claims").
Finally, the trial court could properly consider that issuing the writ in this case would have caused confusion as to whether the relocation in process will proceed or whether it must be stopped. Committee argues forcefully that the application of the proposed ordinance to the pending project could not be determined until a later date, after passage. Disorder and disturbance to City would result from having to stop the current relocation, wait for the vote on the ordinances, and, if the ordinances passed, try to determine whether the new ordinances are even applicable to the move in progress, and, if so, wait until the voters either accepted or rejected the current site. As our supreme court stated in Ladas, "[i]t would be most disastrous to permit the city's business to drag along in such a slipshod, hit or miss kind of a way." 53 So.2d at 324. Similar considerations were before the trial court here. I would, therefore, find that there was no abuse of discretion.
*376 I would also conclude that the proposed ordinances are impermissibly vague.
MAY, J., concurs.
NOTES
[1] The resolution indicated that the City had held a public forum to receive input regarding relocation of the library, and the majority opinion at that forum supported the relocation.
[2] The petition for initiative ordinance on the relocation of the city library included language that the city library and the property upon which it is situated is a valuable "and historic" asset and resource of the City and excluded the "whereas" clause stating that "the voters of the City of West Palm Beach should decide where their city government should operate and conduct business." The two petitions were identical in all other respects.